**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

ELEVATION FINANCIAL GROUP, LLC,

Plaintiff,

v. Case No.: 6:22-cv-2306-WWB-RMN

ARCH SPECIALTY INSURANCE COMPANY and LANDMARK AMERICAN INSURANCE COMPANY,

Defendants.
____________________________________/

**ORDER**

THIS CAUSE is before the Court on Plaintiff's Motion for Remand (Doc. 20) and Defendants' Opposition (Doc. 21). Defendant Arch Specialty Insurance Company ("**Arch**") removed the action to this Court, arguing that Defendant Landmark American Insurance Company ("**Landmark**") was fraudulently joined to avoid removal. (Doc. 1 at 9). Arch argued in its Notice of Removal that Plaintiff lacks standing to bring a claim against Landmark because Arch has not paid or admitted liability up to its $5 million limit and, thus, there is no actual controversy as to Landmark because its policy has not been triggered. (*Id.* at 9, 11). For the reasons set forth herein, Plaintiff's Motion will be granted in part.

## I. BACKGROUND

Plaintiff purchases, revitalizes, and operates apartment communities for independent seniors across the United States, including an apartment complex in Dallas, Texas ("**Serenity at Dallas**"). (Doc. 1-1, ¶¶ 19–20). (*Id.* ¶ 20). In connection with this business, Plaintiff purchased a multi-layer property insurance program from Illinois Union

Insurance Company ("**Illinois Union**"). (*Id.* ¶¶ 21, 23). Illinois Union provided the primary layer of coverage with a limit of $5 million per occurrence. (*Id.* ¶ 23). Arch provides the first-layer excess policy. (*Id.* ¶ 30). The Arch Policy provides $5 million per occurrence in excess of the underlying $5 million from the Illinois Union Policy. (*Id.*). Landmark provides the second-layer excess insurance policy, which provides $10 million per occurrence in excess of the $10 million covered by Illinois Union and Arch. (*Id.* ¶ 35).

On April 7, 2022, a fire occurred at the Serenity at Dallas that destroyed more than 40,000 square feet of the property and over forty apartment units. (*Id.* ¶ 40). Plaintiff's past losses and projected future losses from the fire exceed $17 million. (*Id.* ¶ 41). Illinois Union paid its full underlying limit of $5 million. (*Id.* ¶ 43). Arch, however, indicated that it only owed Plaintiff $436,818.30 for its losses. (*Id.* ¶ 44). Plaintiff alleges that Arch characterized the Main Building and the Expansion Building as two separate items of interest to improperly apply the Arch Occurrence Limit of Liability Endorsement ("**OLLE**"). (*Id.* ¶¶ 33, 47). Had the buildings been treated as one property, the total insured value would have totaled at least $9,629,250. (*Id.* ¶ 49). As a result, after subtracting Illinois Union's $5 million payment, Plaintiff alleges that it is entitled to a payment of at least $4,629,250 from Arch. (*Id.*). Plaintiff further alleges that Arch has failed to acknowledge several coverage extensions that apply to Plaintiff's losses. (*Id.* ¶ 52).

Plaintiff alleges that without regard to whether Arch pays its full $5 million limit or instead pays less based on the purported applicability of the OLLE or other limitation, Plaintiff's losses exceed the attachment point of the Landmark Policy. (*Id.* ¶ 38). Plaintiff alleges, upon information and belief, including based on Arch's application of the OLLE, Landmark will likely contest whether Plaintiff's losses exceed $17 million, whether the

Landmark OLLE precludes or reduces coverage for the losses that exceed the Landmark Policy's attachment point, and whether Arch's failure to pay its full limits of the Arch Policy prevents the attachment of the Landmark Policy. (*Id.* ¶ 39).

Based on the foregoing, Plaintiff alleges three counts seeking declaratory judgments against Landmark. (*Id.* ¶¶ 129–155). In Count IX, Plaintiff asks for a judgment declaring that Plaintiff's losses exceed the $10 million attachment point of the Landmark Policy, thereby triggering the Landmark Policy. (*Id.* ¶ 132). In Count VIII [sic],[1] Plaintiff further asks the Court to declare that the Landmark OLLE does not apply to preclude or reduce Plaintiff's recovery of the amount in issue that exceeds the Landmark Policy's attachment point. (*Id.* ¶ 141). In Count IX [sic], Plaintiff seeks a declaration that Arch's failure to pay the full limits of the Arch Policy does not prevent the attachment of the Landmark Policy. (*Id.* ¶ 150).

## II. LEGAL STANDARD

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). A district court may have original jurisdiction where both "the matter in controversy exceeds the sum or value of $75,000" and the parties are "citizens of different States." 28 U.S.C. § 1332(a). "Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999). Any doubt as to "jurisdiction should be resolved in favor of remand to state court." *Id.*

[1] The Counts are misnumbered—Counts VIII and IX are used twice.

"When a plaintiff names a non-diverse defendant solely in order to defeat federal diversity jurisdiction," the plaintiff "is said to have effectuated a 'fraudulent joinder.'" *Henderson v. Wash. Nat'l Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006). In such a case, "the district court must ignore the presence of the non-diverse defendant[,] . . . and a federal court may appropriately assert its removal diversity jurisdiction over the case." *Id.* To establish fraudulent joinder, "the removing party has the burden of proving that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pleaded jurisdictional facts to bring the resident defendant into state court." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997). "The defendant must make such a showing by clear and convincing evidence." *Henderson*, 454 F.3d at 1281.

"If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997) (citation omitted). "In a fraudulent joinder inquiry, 'federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law.'" *Pacheco de Perez v. AT & T Co.*, 139 F.3d 1368, 1380–81 (11th Cir. 1998) (quoting *Crowe*, 113 F.3d at 1538). Indeed, "[t]he plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998).

## III. DISCUSSION

Although the Court agrees with Defendants that it is likely the Federal Declaratory Judgment Act would apply if the instant motion was a motion to dismiss, Plaintiff seeks declaratory relief under Florida law and the motion at issue is seeking remand. Consequently, the action should be analyzed as to whether it would be viable under Florida's Declaratory Judgment Act. *See, e.g.*, *Pacheco de Perez*, 139 F.3d at 1380–81.

"Florida's Declaratory Judgment Act is 'substantive and remedial' and '[i]ts purpose is to settle and to afford relief from insecurity and uncertainty with respect to rights, status, and other equitable or legal relations and is to be *liberally administered and construed.*'" *Joynt v. Volusia Cnty.*, No. 6:14-cv-1524-Orl, 2014 WL 6908433, at *7 (M.D. Fla. Dec. 8, 2014) (quoting Fla. Stat. § 86.101). "Under chapter 86, '[a]ny person claiming to be interested or who may be in doubt about his or her rights' under a contract . . . 'may have determined any question of construction or validity . . . and obtain a declaration of rights, status, or other equitable or legal relations thereunder.'" *First Auto. Serv. Corp., N.M. v. First Colonial Ins. Co.*, No. 3:07-cv-682-J, 2008 WL 816973, at *4 (M.D. Fla. Mar. 25, 2008) (quoting Fla. Stat. § 86.021). "When declaratory relief is sought, all persons may be made parties who have or claim any interest which would be affected by the declaration." *Id.* (quoting Fla. Stat. § 86.091).

Reviewing the four corners of the Complaint, Plaintiff alleges that it suffered damages that would trigger each policy in its multi-layered policy. Specifically, Plaintiff alleges that damages could reach as high as $17 million[2] and further alleges that

[2] Arch's adjustment team estimated that the Total Adjusted Loss was $11,227,285.80 for the main building and $1,106,667.93 for the Expansion Building. (Doc. 1-1 at 212).

Landmark may still have to pay on the policy even if Arch does not. Further, Plaintiff has yet to be fully compensated for the damage that has already occurred to its property. *See Admiral's Port Condo. Ass'n v. Endurance Am. Specialty Ins. Co.*, No. 22-23408-CIV, 2023 WL 2760076, at *5 (S.D. Fla. Mar. 16, 2023), *report and recommendation adopted*, 2023 WL 2756491 (S.D. Fla. Apr. 3, 2023). Accordingly, there appears to be an actual controversy as there is an injury that has occurred and is ongoing and Plaintiff is asking the court to determine the amount of excess coverage Defendants are obligated to pay under their relevant insurance contracts. *See id.*; *see also Long Island Lighting Co. v. Allianz Underwriters Ins. Co.*, 35 A.D.3d 253, 253–54 (N.Y. App. Div. 2006) (finding controversy involving excess coverage to be justiciable where the plaintiff's highest projected damages established by their expert could potentially trigger the excess coverage); *Owens-Corning Fiberglas Corp. v. Allstate Ins. Co.*, 660 N.E.2d 755, 760 (Ohio Com. Pl. 1993) (finding a justiciable controversy existed where the plaintiff "removed speculation . . . with evidence that the excess coverage will likely be triggered" and noting that the legal issues were common to all excess carriers and addressing the common matters simultaneously avoids piecemeal litigation). Thus, Defendants have failed to prove by clear and convincing evidence that there is no possibility that a state court would find that Plaintiff, based on the allegations set forth its Complaint, can seek a declaratory judgment against Landmark.

Finally, Plaintiff requests an award of attorney's fees and costs incurred in seeking remand. "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under

§ 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). Plaintiff raises this issue only cursorily as to why it is entitled to such an award and thus the request will be denied.

## IV. CONCLUSION

Therefore, it is hereby **ORDERED** and **ADJUDGED** as follows:

1. Plaintiff's Motion for Remand (Doc. 20) is **GRANTED in part** to the extent that Plaintiff seeks remand of this case and **DENIED** in all other respects.
2. This case is **REMANDED** to the Circuit Court of the Ninth Judicial Circuit, in and for Orange County, Florida, Case Number 2022-CA-010746-O.
3. The Clerk is directed to close this case.

**DONE AND ORDERED** in Orlando, Florida on August 16, 2023.

WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record